IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA ex rel. Carmelo Quintana, | ) ) ) | |
| *Petitioner*, | ) ) | |
| v. | ) ) | No. 08 C 5629 |
| NEDRA CHANDLER, Warden, Dixon Correctional Center, | ) ) ) ) | Honorable David H. Coar |
| *Respondent*. | ) ) | |

**MEMORANDUM OPINION AND ORDER**

Petitioner Carmelo Quintana's ("Quintana") petition for habeas corpus pursuant to 28 U.S.C. § 2254 is before this Court. For the following reasons, the motion is DENIED in part and STAYED in part pending an evidentiary hearing.

**BACKGROUND**

**I. Direct Proceedings**

On February 19, 1999, Carmelo Quintana and Jorge Navarrete ("Navarrete") were charged with five counts of aggravated criminal sexual assault, four counts of aggravated kidnapping, one count of criminal sexual assault, and two counts of kidnapping. The defendants were simultaneously but separately tried at a bench trial and found guilty of aggravated criminal sexual assault and aggravated kidnapping.

The victim testified that, on January 21, 1999, she was walking down a street in Chicago, Illinois, because snow and ice obstructed the sidewalks. A gold Ford Aerostar van drove alongside her and someone pulled her inside the vehicle. Dagoberto Alvorado ("Alvorado") was driving, Navarrete occupied the middle seat, and Quintana sat in the rear seat. After the victim was pulled into the middle seat, Quintana held her from behind while Navarrete struck her with a beer bottle and told her what he wanted to do to her. Navarrete pulled off her pants and attempted to have sex with her, although he failed to fully achieve penetration. Quintana slapped her legs and buttocks and laughed. At some point, the victim tried to escape through the side door but was pulled back into the van. Navarrete told Quintana to watch her and make sure that she did not escape.

In order to have a better chance of fleeing, the victim suggested to defendants that she get on top of Navarrete. She then struck Navarrete and jumped out of the front passenger door, wearing only a shirt and a sock. A bystander offered her a coat and notified the authorities. The victim was taken to Holy Cross Hospital, where she was treated and released. As a result of leaping from a moving van, the victim had sprained her ankle and bruised her knees and ankles. She also sustained bruises and lacerations to her throat, face and jaw.

A written statement signed by Quintana upon his arrest was also admitted at trial. It read that, on the evening of the incident, Alvarado was driving Navarrete's van, with Quintana and Navarrete as passengers. They picked up the victim because she had asked for a ride. At some point, Navarrete pulled the victim into the backseat and attempted to pull off her pants. When the victim struggled and said "no," he slapped her face. Navarrete had sex with the victim as Quintana watched. After a two minute break, Navarrete grabbed the victim a second time and she began screaming. Quintana covered her mouth. Quintana also grabbed the victim when she

first tried to escape. The victim repositioned herself on top of Navarrete, at which point Quintana slapped her on the buttocks. The victim then jumped out the front passenger door. Navarrete placed her clothes in a plastic bag and gave it to Quintana, who threw it in a garbage can in an alley.

At trial, Quintana testified that he did not have sex with, hit, restrain, or laugh at the victim. He stated that Navarrete, not Alvorado, was the driver that night. Quintana testified that the victim, after talking with Alvorado and drinking some beer, agreed to have sex with Alvorado for twenty dollars. Alvorado and the victim proceeded to have sex in the middle seat. After an argument broke out, the victim jumped out of the front passenger side door. When Navarrete asked why she had left, Alvorado explained that she had wanted more money, but he had refused. Quintana did not know what happened to the victim's clothes, nor did he know anything about Alvorado's whereabouts after the incident.

Quintana's trial counsel did not elicit any testimony about prior consistent statements made by Quintana. Before admitting to the story reflected in the written statement, Quintana had initially maintained that the victim had agreed to have sex with the defendants for twenty dollars each. The trial judge barred the defense from cross-examining the victim about a prior arrest for soliciting a ride and agreeing to perform a sex act for twenty dollars, pursuant to the Illinois rape-shield statute. Quintana was found guilty on all counts. He was sentenced to 15 years' imprisonment on the aggravated criminal sexual assault charge and 6 years for aggravated kidnapping, to run consecutively.

Quintana and Navarrete appealed. On June 19, 2002, the Illinois Court of Appeals affirmed the judgment of the trial court. *People v. Quintana*, 772 N.E.2d 833, 847 (Ill. App. Ct. 2002). It further denied Quintana's petition for a rehearing on August 5, 2002. Quintana filed a

petition for leave to appeal ("PLA") before the Illinois Supreme Court. The court denied his PLA on December 5, 2002.

**II. Postconviction Proceedings**

On May 28, 2003, Quintana filed a *pro se* petition for postconviction relief pursuant to 725 ILCS 5/122-1. He submitted an affidavit alleging that the State had offered him a four-year sentence in exchange for a guilty plea, but that his counsel had not recommended it or informed him that he could get a harsher sentence. The court appointed Quintana an attorney, who filed a supplemental petition alleging that (1) Quintana's trial counsel rendered ineffective assistance at his plea proceedings; (2) trial counsel was ineffective for failing to raise a claim under the Vienna Convention; (3) petitioner was denied his constitutional right to confrontation when the trial court restricted cross-examination of the victim, and trial and appellate counsel were ineffective for failing to preserve or raise this issue; and (4) trial counsel was ineffective for failing to impeach the victim with evidence of her prior arrests, elicit Quintana's prior consistent statements, and correct Quintana's age in his presentence investigation report. Quintana's attorney also filed a petition for relief from judgment pursuant to 735 ILCS 5/1-1401, alleging violations of the Vienna Convention. Attached to the supplemental petition were affidavits from Quintana and his trial counsel corroborating his allegations.

On July 25, 2006, the circuit court dismissed Quintana's petitions. Quintana appealed, pressing the following issues: (1) trial counsel rendered ineffective assistance at the plea proceedings; (2) Quintana's right of confrontation was violated when the trial court restricted cross-examination of the victim, and trial and appellate counsel were ineffective for failing to preserve or raise this issue; and (3) trial counsel was ineffective for failing to impeach the victim

4

with evidence of prior arrests; and (4) trial counsel was ineffective for failing to elicit Quintana's prior consistent statements. The state appellate court affirmed the dismissal of Quintana's petitions. *People v. Quintana*, No. 1-06-2281, Order (Ill. App. Ct. Feb. 13, 2008.)

Quintana filed a PLA alleging : (1) trial counsel provided ineffective assistance at the plea proceedings; (2) petitioner was denied his right of confrontation when the trial court restricted cross-examination of the victim; (3) appellate counsel was ineffective for failing to raise a confrontation claim on appeal; (4) trial counsel was ineffective for failing to make an adequate record for review of the confrontation claim. The Illinois Supreme Court denied Quintana's PLA on May 29, 2008. On October 2, 2008, Quintana timely filed a petition for federal habeas relief, alleging the same four claims raised in his postconviction PLA.

## STANDARD

Section 2254 empowers federal district courts to hear petitions for a writ of habeas corpus on behalf of a person in state custody on the ground that he or she is in custody in violation of the Constitution, treaties, or laws of the United States. 28 U.S.C. § 2254(a) (1996); *see Wainwright v. Sykes*, 433 U.S. 72, 77 (1977). A federal court may only consider the merits of a writ of habeas corpus after the petitioner has (1) exhausted all available state court remedies; and (2) first presented any federal claim in state court. *See* 28 U.S.C. § 2254(c) (1996); *Coleman v. Thompson*, 501 U.S. 722, 731 (1991); *Jones v. Washington*, 15 F.3d 671, 674 (7th Cir. 1994). Any claim that has not been exhausted in the available state courts will be considered defaulted and therefore procedurally barred.

A federal court will not grant relief on claims that have been decided on the merits by state courts unless the state court's decision "was contrary to, or involved an unreasonable

5

application of clearly established federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d)(2).

## ANALYSIS

### I. Confrontation Clause Claims

#### A. Substantive Violation

Quintana claims that the trial court violated his constitutional right to confrontation when it sustained the State's objections to his counsel's inquiries into the victim's prior prostitution arrests. The Illinois Appellate Court held that Quintana waived this claim because he failed to raise it on direct review, despite the fact that "the court's rulings on the State's objections were apparent on the trial record and not a newly discovered matter." *People v. Quintana*, No. 1-06-2291, Order at *8 (Ill. App. Ct. Feb. 13, 2008). In so holding, the appellate court relied on *People v. Wilson*, 717 N.E.2d 835, 840 (Ill. App. Ct. 1999) ("[A]ny issue that could have been presented on direct appeal, but was not, is waived.") (quoting *People v. Thomas*, 647 N.E.2d 983, 987 (Ill. 1995)) (additional citations omitted).

A constitutional claim is forfeited if the state court declined to reach its merits because an independent state law ground was adequate to support the judgment. *See Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991). Holding a claim waived because a petitioner failed to raise it on direct appeal is a firmly established practice in Illinois. *See, e.g.*, *People v. Blair*, 831 N.E.2d 604, 614-15 (Ill. 2005) (listing cases). The Illinois Appellate Court denial of Quintana's Confrontation Clause claim on the principle of waiver therefore constitutes a decision made on an adequate and independent state law ground. *See Daniels v. Knight*, 476 F.3d 426, 431-32 (7th

Cir. 2007) (holding that a finding of waiver is a procedural default prohibiting federal habeas review); *Gomez v. Jaimet*, 350 F.3d 673, 677 (7th Cir. 2003) (Illinois court's holding that claim was forfeited pursuant to Illinois law was adequate and independent state law ground). This holds true even though the state appellate court decided that, in the alternative, the claim failed on the merits. *See Smith v. Battaglia*, 415 F.3d 649, 653 (7th Cir. 2005) (holding a claim procedurally defaulted, where a state appellate court's decision rested on two separate grounds, one of which being an adequate and independent state procedural reason for rejecting the claim). Accordingly, Quintana's Confrontation Clause claim is procedurally defaulted because the court clearly and expressly disposed of the claim on the adequate and independent state ground of waiver.

### B. Ineffective Assistance of Trial and Appellate Counsel

Quintana argues that his trial counsel was ineffective for not preserving a better record for review of his Confrontation Clause claim. He also asserts that his appellate counsel was ineffective for not pursuing the claim on appeal. The state appellate court did not address these claims, even though Quintana raised them in his brief. The Court therefore reviews them *de novo*. *See Canaan v. McBride*, 395 F.3d 376, 383 (7th Cir. 2005).

To prevail on an ineffective assistance of counsel claim, a petitioner must show both that his counsel was deficient and that this deficiency prejudiced the petitioner. *Strickland v. Washington,* 466 U.S. 668, 687 (1984). Quintana cannot establish that his attorneys' performances were deficient because they are not constitutionally obliged to raise non-meritorious issues. *See Badelle v. Correll*, 452 F.3d 648, 664 (7th Cir. 2006); *Howard v. Gramley*, 225 F.3d 784, 790 (7th Cir. 2000).

7

The trial court excluded evidence of the victim's history of prostitution under the Illinois rape-shield statute, 725 ILCS 5/115-7. The Supreme Court has held that a state's interest in providing rape victims "heightened protection against . . . harassment[] and unnecessary invasions of privacy" justifies some restrictions on the admission of evidence. *Michigan v. Lucas*, 500 U.S. 145, 149 (1991). Since the Supreme Court has yet to hold any application of state rape-shield statutes inconsistent with the Constitution, *see Hammer v. Karlen*, 342 F.3d 807, 812 n. 6 (7th Cir. 2006), claims such as Quintana's are governed by general Confrontation Clause precedent. *See, e.g.*, *Dunlap v. Hepp*, 436 F.3d 739, 742 (7th Cir. 2006).

To warrant habeas relief for an infringement of a petitioner's confrontation rights, the excluded testimony must be "highly relevant" to the petitioner's guilt or innocence. *Hammer*, 342 F.3d at 812; *see also Pack v. Page*, 147 F.3d 586, 589 (7th Cir. 1998) (all the Constitution requires "is that courts . . . give earnest consideration to the possibility that excluding evidence under a rape shield law may interfere unduly with the defendant's opportunity to present a defense of innocence"). Moreover, the petitioner's interest in presenting it must not be "outweighed by the state's interest in protecting the privacy of sexual assault victims." *Hammer*, 342 F.3d at 812. Overall, "trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on . . . cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety . . . ." *Dunlap*, 436 F.3d at 741.

At trial, Quintana was permitted to present his theory of the case at length. His counsel questioned the victim and defendants about how she voluntarily boarded the van and agreed to have sex in exchange for money. He pressed the notion that Quintana did not have sex with or restrain the victim in the van. Counsel also asked the victim about her conviction history

regarding drug possession.  The fact that she had been arrested previously for prostitution was not so "highly relevant" to Quintana's case that it outweighed the state's interest in "prevent[ing] the defendant from harassing and humiliating the complaining witness with evidence of either her reputation for chastity or specific acts of sexual conduct with persons other than defendant." *People v. Summers*, 818 N.E.2d 907, 912 (Ill. App. Ct. 2004) (describing the policy behind the Illinois rape-shield statute).  Whether the victim engaged in prostitution in the past has no direct bearing on whether she gave consent to sexual relations on the night in question, although it was relevant to her credibility and how she came to be in the van.

The trial court placed reasonable restrictions on counsel's cross-examination of the victim to protect her from undue harassment, while permitting Quintana to present his version of the facts at trial.  In doing so, the trial court did not infringe upon Quintana's constitutional right to confrontation.  It also acted in accordance with the Illinois rape-shield statute and accompanying case law.  *See* 725 ILCS 5/115-7(b) (precluding examination of any prior sex acts of a victim, unless those acts involve the defendant); *People v. Buford*, 441 N.E.2d 1235, 1239-40 (Ill. App. Ct. 1982) (holding that limitation of defendant's cross-examination of complainant, which barred inquiry into complainant's prior conviction for prostitution, did not violate defendant's right to confrontation); *People v. Ivory*, 487 N.E.2d 1035, 1039 (Ill. App. Ct. 1985) (holding that exclusion of prior prostitution conviction was proper under Illinois rape-shield statute, despite concurrent prosecution for aggravated kidnapping).  It follows that an appellate court's denial of Quintana's Confrontation Clause claim would not be contrary to, or an unreasonable application of, clearly established federal law.  28 U.S.C. § 2254(d)(1).

Because Quintana's Confrontation Clause claim is without merit, his attorneys were not deficient in declining to preserve or raise it.  Nor can Quintana establish that he was prejudiced

9

by their refusal to address it. *See Howard*, 225 F.3d at 790 (petitioner must show that the issue omitted from appeal may have resulted in reversal). Quintana is not entitled to habeas relief for ineffective assistance of counsel on his Confrontation Clause claim.

## II.     Ineffective Assistance of Counsel at Plea Negotiations

Before trial, the State offered Quintana an offer of four years in exchange for a guilty plea. Quintana alleges that his trial counsel failed to inform him that (a) by statute, his sentences would be imposed consecutively; (b) he would have to serve 85% rather than 50% of his sentence under the Truth-in-Sentencing Act; and (c) he could be found guilty by accountability for the acts contained in his written statement, which could be admitted at trial.

Cases about attorney incompetence involving rejection of plea agreements rarely come before the Seventh Circuit. *Paters v. United States,* 159 F.3d 1043, 1046 (7th Cir. 1998). As a starting point, it is well-established that criminal defendants have the right to the effective assistance of counsel in deciding whether to accept or reject a government plea agreement. *See Hill v. Lockhart,* 474 U.S. 52, 56-57 (1985); *Toro v. Fairman, 940 F.2d 1065, 1067 (7th Cir. 1991), cert. denied,* 505 U.S. 1223 (1992). "[I]n the ordinary case criminal defense attorneys have a duty to inform their clients of plea agreements proffered by the prosecution . . . . Apart from merely being informed about the proffered agreement, we also believe that a defendant must be involved in the decision-making process regarding the agreement's ultimate acceptance or rejection." *Johnson v. Duckworth,* 793 F.2d 898 (7th Cir. 1986), *cert. denied,* 479 U.S. 937.

The two-pronged *Strickland* analysis applies to guilty plea challenges based on ineffective assistance of counsel claims. *Hill,* 474 U.S. at 57-58; *United States v. Arvanitis,* 902 F.2d 489, 494 (7th Cir.1990); *Strickland v. Washington,* 466 U.S. 668, 687-88 (1984). Under

*Strickland*, a petitioner must show that his attorney's representation fell below an objective standard of reasonableness, and that this deficient performance resulted in prejudice. 466 U.S. at 687-88. To show the prejudice necessary to satisfy the second prong of *Strickland,* a petitioner claiming attorney incompetence during the rejection of a plea deal must show "(1) through objective evidence that (2) there is a reasonable probability that he would have accepted the alleged proposed plea agreement absent defense counsel's advice." *Paters,* 159 F.3d at 1046; *see also Toro*, 940 F.2d at 1068; *Hill*, 474 U.S. at 59.

A defendant's self-serving, post-conviction testimony is insufficient evidence, by itself, to establish a "reasonable probability" that he or she would have accepted the plea agreement had he received effective assistance. *See Toro*, 940 F.2d at 1068; *Johnson,* 793 F.2d at 902 n. 3. The Seventh Circuit has indicated that the objective evidence requirement could be satisfied by an affidavit from defense counsel or the government. *Paters*, 159 F.3d at 1047-48 n. 6.

### A. Quintana's Evidence

In an affidavit submitted during Quintana's state postconviction proceedings, counsel confirms that, because Quintana did not speak much English, almost all communications with Quintana went through a court interpreter or the co-defendant's attorney. Counsel also admits that, at the time, he was ignorant of the statutory requirement under which sentences for aggravated criminal sexual assault and kidnapping must be imposed consecutively. Counsel could not recall a specific discussion with Quintana about mandatory consecutive sentencing and was "somewhat surprised" by the trial court's sentence. On the issue of good time credits, counsel had briefly discussed with Quintana the fact that sentences were no longer "day-to-day" (50%), but did not specifically state that Quintana would have to serve 85% of his actual sentence under the Truth-in-Sentencing Act, 730 ILCS 5/3-6-3(a)(2)(ii). Counsel declares that,

although "there was discussion of the state's offer of four years as being reasonable, it was not specifically recommended because [Quintana] insisted that he was not directly involved and the actual perpetrator was an individual who had fled to Mexico." Counsel further states that "during the discussion of the four-year offer, I did not advise Mr. Quintana that his signed statement would be admitted into evidence at trial, and that it established his guilt of both aggravated criminal sexual assault and aggravated kidnapping by accountability." Finally, counsel admits that he did not bring to the court's attention the fact that Quintana was 19 years old at sentencing, rather than 21.

In his own affidavit, Quintana avers that he was never advised that consecutive sentencing was mandatory. Quintana asserts that "[b]efore trial, I believed that 50% of any sentence imposed would be served. . . . If I had known that the minimum sentence was not six years of which 50% would be served, but 12 years of which 85% would be served, I would have accepted the four-year offer." Quintana's affidavit also maintains that "I did not understand the law of guilt by accountability. My attorney did not tell me, in discussing the four-year offer, that the State would introduce my signed statement, and that if the court believed my statement, it would show my guilt by accountability. My attorney told me that I had a "winnable" case and did not recommend accepting the offer."

### B. The State Appellate Court's Holding

The Illinois Appellate Court considered only the prejudice prong of *Strickland* when it rejected Quintana's claim of ineffective assistance during plea negotiations. The state court noted that, although counsel was unaware of the mandatory consecutive sentencing requirement, he did not affirmatively tell Quintana that he would receive concurrent sentences. Nor did counsel state that Quintana rejected the State's offer based on this advice. Furthermore, the state

court found no corroboration that Quintana would have accepted the plea offer had his counsel informed him of the updated Truth-in-Sentencing Act provisions or that his written statement could be admitted at trial. Specifically, by stating that "there was some brief discussion that sentences were no longer 'day to day' (50%)," counsel contradicted the allegation that Quintana believed he could only serve half his sentence. And since Quintana was advised of his *Miranda* rights prior to giving his statement, he could not claim ignorance of the fact that it could be used against him in a court of law. The Illinois Appellate court concluded that Quintana failed to establish prejudice as required by *Strickland,* and denied his ineffective assistance of counsel claim.

### C. Failure to Explain Guilt by Accountability

Quintana alleged that trial counsel failed to explain that Quintana's written statement established his guilt of aggravated criminal sexual assault and aggravated kidnapping by accountability. The state appellate court did not specifically address this issue. This Court thus reviews it *de novo*. *See Canaan*, 395 F.3d at 383.

Quintana's affidavit states that, because he did not understand the law of accountability, he did not realize that his statement established his guilt under that theory. Counsel's affidavit confirms that counsel neglected to explain this to Quintana. Counsel states that he did not recommend the offer because Quintana insisted that "he was not directly involved" and was not the perpetrator of the crimes. Given the brevity of counsel's affidavit, it is unclear whether Quintana merely insisted that he was innocent of the principal crime – neither the testimony of the victim or defendants, nor the written statements of the defendants, identified Quintana as the principal offender – or whether Quintana also denied the facts that established his accountability. If the latter, Quintana's counsel is not constitutionally required to coerce his client into pleading

13

guilty where innocence is asserted. In such a scenario, counsel's poor forecast of Quintana's potential sentences would not have prejudiced the outcome of the plea negotiations. If the former, counsel's failure to discuss accountability may have deprived Quintana of the right to reject or accept a plea offer in a voluntary and reasonably informed manner. Such an omission could qualify as constitutionally deficient performance. *See Hill,* 474 U.S. at 56-57. It should not be forgotten that Quintana, a teenager with extremely limited English skills at the time, was a "particularly vulnerable defendant . . . especially dependent on counsel to guide him through the criminal justice system." *Toro*, 940 F.2d at 1065.

If Quintana went to trial because he felt he was not guilty of the principal offense, counsel's admission that he failed to correct Quintana on the issue of guilt establishes prejudice. Learning that his written statement established guilt by accountability would undermine Quintana's reasons for rejecting the plea deal, thus altering the outcome of the negotiations.

The Court is unable to accurately interpret counsel's affidavit, or resolve the greater issue of whether Quintana was deprived of effective assistance during plea negotiations, without a hearing. The Seventh Circuit's ruling in *Paters v. United States* sets the standard for a hearing in this case. *See* 159 F.3d 1043. Paters, who was sentenced to 121 months' imprisonment, claimed that his attorney's deficient performance during the plea negotiations convinced him to reject the Government's offer. *Id.* at 1044-45. He submitted affidavits from his parents confirming that they attended pre-plea offer conferences in which the defense counsel said that Pater's sentence could not exceed five years. *Id.* at 1047. Despite the fact that these statements could not directly speak to whether Paters would have accepted the plea deal but for his attorney's advice, the Seventh Circuit held that, coupled with the Government's concession that Paters's counsel told him that "he had nothing to lose by going to trial" and that Paters could be held responsible for

no more than two kilograms of cocaine whether he stood trial or pled guilty, the evidence was sufficient to warrant a hearing. *Id*. at 1048-49 (remanding for an evidentiary hearing).

Here, the evidence offered by Quintana is more on point than the statements in *Paters*. In addition, Quintana's case satisfies the requirements for a hearing under 28 U.S.C. § 2254(e)(2). Under § 2254(e)(2), a hearing may only be held when a petitioner "develop[ed] the factual basis of [the] claim in State court proceedings." If a petitioner has passed that bar, "it is then necessary to evaluate the request for an evidentiary hearing under pre-AEDPA standards." *Matheney v. Anderson,* 253 F.3d 1025, 1039 (7th Cir. 2001); *U.S. ex rel. Hampton v. Leibach,* 347 F.3d 219, 244 n. 12 (7th Cir. 2003). Under pre-AEDPA standards, a federal evidentiary hearing is required only if (1) the petitioner alleges facts which, if proved, would entitle him to relief and (2) the state courts, for reasons beyond the control of the petitioner, never considered the claim in a full and fair hearing. *Matheney*, 253 F.3d at 1039 (quotation marks omitted).

Quintana adequately developed the facts of his claim during his state postconviction proceedings by submitting the aforementioned affidavits. He has alleged facts which, if proved, entitle him to relief. Furthermore, the record indicates that Illinois courts did not conduct a full and fair hearing of his claim. The circuit court summarily dismissed Quintana's claim on the grounds that case against him was strong, rather than an assessment of Quintana's actual ignorance, his reliance on his attorney's advice, or his attorney's performance. (July 25, 2006 Tr. 24:21-25:15.) The appellate court sidestepped the issue entirely, addressing only the question of whether Quintana was prejudiced by his attorney's failure to inform him that his statement would be admitted at trial. *People v. Quintana*, No. 1-06-2291, Order at *7-8 (Ill. App. Ct. Feb. 13, 2008). This cursory treatment does not constitute a "full and fair hearing." *See Davis v.*

*Lambert*, 388 F.3d 1052, 1066 (7th Cir. 2004). Quintana is therefore entitled to an evidentiary hearing before this Court.

In preparation for a hearing, the Court instructs the parties to provide a copy of the plea offer, if a written copy exists. If the trial court at any time engaged in a plea colloquy with Quintana, a transcript must be provided. Finally, trial counsel states that he did not recommend the plea offer because Quintana claimed that "he was not directly involved and the actual perpetrator was an individual who had fled to Mexico." The parties should anticipate that, at the hearing, the Court will examine whether the petitioner only denied being a principal offender, or whether he also denied facts that established his guilt by accountability.

## CONCLUSION

For the foregoing reasons, Quintana's petition for a writ of habeas corpus is STAYED in part and DENIED in part. The petition is stayed as to Quintana's claim of ineffective assistance of counsel during plea negotiations, pending an evidentiary hearing. The hearing shall be scheduled by further order. Counsel for Quintana will be appointed to represent him at the hearing and any subsequent briefing.

Enter:

/s/ David H. Coar

_____
David H. Coar
United States District Judge

Dated: **April 26, 2010**